IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF RICHARD G. LUTZ, JR., Deceased and SHEREE NORDALL, <br><br> *Plaintiffs,* <br><br> v. <br><br> SANDRA LUTZ, MOTORISTS LIFE INSURANCE CO., and STANDARD INSURANCE CO. <br><br> *Defendants.* | CIVIL ACTION <br> NO. 16-01461 |

**PAPPERT, J.**                                                                                    October 11, 2016

**MEMORANDUM**

The Estate of Richard Lutz ("the Estate"), through its executrix Sheree Nordall, sued Sandra Lutz ("Sandra"), Motorists Life Insurance Company ("Motorists") and Standard Insurance Company ("Standard") to recover pension and insurance benefits Sandra received under life insurance policies held by her ex-husband Richard Lutz ("Richard").

The Estate alleges that after Richard's death, Sandra breached the Marriage Settlement Agreement (the "Settlement Agreement") resolving the couple's divorce (Count I) and committed fraud in obtaining payments from Richard's retirement accounts (Count II) and death benefits from an insurance policy issued by Standard (Count III). Sandra is also alleged to have breached the terms of the Settlement Agreement by filing a claim for the death benefit under Richard's life insurance policy with Motorists (Count VII). Count IV claims that Standard breached its fiduciary duties under ERISA by paying Sandra the policy benefits.

Sandra was the primary beneficiary under the Motorists' policy and the Estate was the contingent beneficiary. In Counts V and VI respectively, the Estate asserts that Motorists

1

breached an implied covenant of good faith and fair dealing as well as the insurance contract itself when it paid Sandra, and not the Estate, the death benefits owed under the Motorists policy. (ECF No. 40.)  Motorists filed a motion to dismiss both counts.  (ECF No. 43.)  The Estate filed its response on August 8, 2016 (ECF No. 44), and the Court held oral argument on September 21, 2016.  (ECF No. 49.)  For the reasons that follow, the Court grants the motion and dismisses Motorists from the case.  This is the fifth iteration of the complaint.  *See* (ECF Nos. 21, 25, 36, 40.)  The Estate's four amendments to the complaint were in response to motions to dismiss filed by Motorists.  (ECF Nos. 9, 35.)  The dismissal is accordingly with prejudice.

## I.

Richard and Sandra were married on May 18, 1985.  (3rd Am. Compl., ¶ 8.)  On August 31, 1992 Richard purchased a life insurance policy from Motorists ("the policy") and named Sandra as the primary beneficiary and the Estate as the contingent beneficiary.  (*Id.* ¶ 9.)  The Lutzs' marriage eventually deteriorated, and in March 2012 Richard hired a lawyer to begin divorce proceedings.  (*Id.* ¶ 15.)  Richard's attorney filed a divorce complaint against Sandra on March 30, 2012.  (*Id.* ¶ 16.)  Richard and Sandra entered into the Settlement Agreement on August 28, 2012 to divide their marital assets.  (*Id.* ¶ 17.)  Throughout the negotiations which culminated in the Settlement Agreement, Richard and Sandra were both represented by counsel.  (3rd Am. Compl., Ex. A., at 2, ECF No. 40-1.)  The nine page document, entered into by the parties after "long and careful consideration" effectuated an agreement to resolve, compromise and settle all disputes and property rights and "all rights in, to or against the property or estate of the other."  (*Id.* at 1.)  The Settlement Agreement covers, among other things, retirement accounts, bank accounts and the division of proceeds from the sale of real estate.  (*Id.* at 3–4, ¶¶

14, 17, 19). It also specifically addresses Richard and Sandra's insurance policies, stating that "[t]he parties agree that each may maintain or dispose of any existing life insurance policies and may choose beneficiaries to any such policies as they see fit." (*Id.* at 5, ¶ 22.)

The divorce was finalized in the Berks County Court of Common Pleas on September 6, 2012. (3rd Am. Compl., ¶¶ 18, 20.) The divorce decree incorporated the terms and conditions of Richard and Sandra's Settlement Agreement, making the Agreement an Order of the court. (*Id.* ¶¶ 19–20.) The divorce decree was not, however, entered by the Prothonotary of the Common Pleas Court until Wednesday, September 19, 2012. (*Id.* ¶ 21.) Richard's attorney left Richard a telephone message on the afternoon of Thursday, September 20, 2012 informing him that the divorce was finalized. (*Id.* ¶ 107.) Because Richard worked nights, however, (*id.* ¶ 106), he did not receive the message until Friday, September 21, 2012, (*id.* ¶¶ 22, 28–29).

Richard was scheduled to work on Sunday, Monday and Tuesday the following week. (*Id.* ¶ 110.) He called off work on Sunday, (3rd Am. Compl., Ex. E, at 38, ECF No. 40-1), but when he failed to call off or appear for his shifts on Monday and Tuesday nights, his employer became concerned and "put a wellness check out for him." (*Id.*) Richard's body was found on Wednesday, September 26, 2012—seven days after his divorce was finalized and five days after he learned of it. (3rd Am. Compl., ¶ 23.) The death certificate states Richard died of an intentional overdose on September 26, 2012. (3rd Am. Compl., Ex. C, at 16, ECF No. 40-1). The Lancaster County Coroner, however, noted that "rigor was already receding" when Richard's body was found. (3rd Am. Compl., ¶ 35.) The Estate contends that this shows that Richard died days before his body was found, and that there were no business days (on which he presumably could have removed Sandra as the policy's primary beneficiary) between the finalization of his divorce and his death. (*Id.* ¶¶ 36, 44, 112.) Motorists was aware of Richard

and Sandra's divorce at the time of Richard's death.[1] (3rd Am. Compl. ¶ 119.) Sandra filed a claim with Motorists and Motorists paid her the full death benefit of $65,714.40 on March 14, 2013, (*id.* ¶¶ 39, 122).

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an

---

[1] Pa. C.S. § 6111.2 instructs that any designation of a spouse as a beneficiary on a life insurance policy is void if, at the time of the policyholder's death the couple are divorced or engaged in divorce proceedings. The statute does not govern this case, however, as the Motorists policy was purchased on May 18, 1985, (2d Am. Compl. ¶ 8), and the statute did not take effect until December 16, 1992, *Parsonese v. Midland Nat'l Ins. Co.*, 706 A.2d 814, 815 (Pa. 1998). Applying the statute retroactively would violate both the Pennsylvania and United States Constitutions. *Id.* at 819; *see also* U.S. Const. art. I, § 10.

entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). This inquiry does not impose a probability requirement on plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 545)). Rather, it "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* (quoting *Twombly*, 550 U.S. at 545).

### III.

#### A.

Count V asserts that by paying Sandra the death benefits Motorists breached the implied covenant, and hence duty, of good faith and fair dealing owed by insurers to their insureds under Pennsylvania law. *See Condio v. Erie Ins. Exch.*, 899 A.2d 1136 (Pa. 2006). An insured may "bring a cause of action for breach of the contractual duty of good faith and fair dealing in the insurance context" and recover compensatory damages for the insurer's failure to act in good faith. *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 408 (W.D. Pa. 2004).

Pennsylvania does not recognize this cause of action, however, when it arises from the same behavior as a separately pleaded breach of contract claim. *Id.* at 409. Where that is the case, a claim for breach of good faith and fair dealing is "subsumed by" the breach of contract claim. *Id.* (citing *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 391 (Pa. Super. 2008); *see also Zaloga v. Provident Life & Accident Ins. Co. of Am.*, 671 F. Supp. 2d 623, 631 (M.D. Pa. 2009) ("There is . . . no *independent* cause of action for a breach of the covenant of good faith and fair dealing—arising in contract—in Pennsylvania because such a breach is merely a breach of contract." (emphasis added)); *JHE, Inc. v. Se. Pa. Transp. Auth.*, No. 1790, 2002 WL 1018941, at *5 (Pa. Com. Pl. May 17, 2002) ("[T]he implied covenant of good faith

does *not* allow for a claim separate and distinct from a breach of contract claim. . . . [T]he covenant does nothing more than imply certain obligations into the contract itself.").

Here the Estate included a separately pleaded breach of contract claim in Count VI. (3rd Am. Compl. ¶¶ 123–33.) Count V is therefore subsumed into Count VI and dismissed accordingly. *See, e.g.*, *JHE, Inc.*, 2002 WL 1018941, at *5.

## B.

Insurance policies are contracts. *Am & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010). To state a claim for breach of contract, a plaintiff must allege facts to show that: (1) there was a contract to which the plaintiff and defendant were parties; (2) the defendant breached a duty imposed by the contract; and (3) the plaintiff suffered damages as a result. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). When construing a contract, the Court must "ascertain[] the intent of the parties." *Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 852 n.6 (Pa. 2015). The parties' intent is inferred from the written terms of the contract. *Swarner v. Mut. Benefit Grp.*, 72 A.3d 641, 644 (Pa. Super. 2013). Where contract language is clear and unambiguous, the Court must give effect to that language unless doing so would "violate[] a clearly expressed public policy." *Id.* at 644–45 (citing *Adamitis v. Erie Ins. Exch.* 54 A.3d 371, 375–76 (Pa. Super. 2012)). The Estate contends that Motorists should have paid the death benefit to it and not Sandra and that Motorists' failure to do so breached the insurance contract. The Estate fails to state a claim for breach of contract because Richard neither changed the beneficiary in the manner required under the policy nor did he take any positive, unequivocal act toward doing so.

**i.**

Under Pennsylvania law, a policyholder may change a beneficiary in two ways. First, the policyholder may strictly comply with the procedures prescribed by the policy. *Mfgs. Life Ins. Co. v. Dougherty*, 986 F. Supp. 928, 931 (E.D. Pa. 1997) (citing *Equitable Life Assur. Soc. of U.S. v. Stitzel*, 445 A.2d 523, 525 (1982)).

The Motorists policy was clear regarding any change of beneficiary:

**Designation**. The Beneficiary named in the application for this Policy will receive the proceeds upon the death of the Insured *unless the beneficiary designation has been changed by you*.

**Change**. You may change any beneficiary designation during the lifetime of the Insured unless otherwise provided in the previous designation. A change of beneficiary designation will automatically revoke any previous designation.

*A change of designation may be made by filing a written request in a form satisfactory to us. A new designation will take effect as of the date the notice signed*, if we acknowledge receipt in writing, whether or not the Insured or you are alive at the time of acknowledgement. The new designation shall be subject to:

    1. The rights of any assignee of record with us.
    2. Any payment made or other action taken by us before the acknowledgement.

(3rd Am. Compl., Ex. H, at 41, ECF No. 40-2 (emphasis added).)

Richard's failure to comply with this provision is undisputed. Compliance with the policy's terms and explicit requirements is excused only in narrow circumstances. First, "the intent of the insured will be given effect if he does all that he reasonably can under the circumstances to comply with the terms of the policy." *In re Estate of Golas*, 751 A.2d 229 (Pa. Super. 2000). For this exception to apply, the policyholder must demonstrate a "positive, unequivocal act toward making the change, the mere declaration of intent to change the beneficiary is not enough." *Dougherty*, 986 F. Supp. at 931. The Estate does not contend Richard took a positive, unequivocal act to remove Sandra as the policy's primary beneficiary.

7

*Cf. In re Estate of Golas*, 751 A.2d 229 (finding terminally ill policyholder's notification to his attorney and two brokers associated with his IRA plan sufficient to change the beneficiary of the IRA).

The Estate does contend that Richard was unable to do what the policy terms required to remove Sandra as a beneficiary because he died before he could do so. The Estate asserts that Richard died well before his death certificate says he did—indeed the Estate's hopes lie in its purported ability to show that Richard died not on Wednesday, September 26, 2012 but rather as early as the preceding weekend. From there the Estate presupposes that Richard would have completed the necessary paperwork to change the policy's primary beneficiary before Wednesday, September 26, 2012. *See* (3rd Am. Compl., ¶ 112.) All of this is mere speculation. Even if the Estate could allege facts to plausibly show that Richard intended to do so, it would not matter: Richard's intent to change the beneficiary is not enough under Pennsylvania law. He must have taken a positive, unequivocal act to remove Sandra as the primary beneficiary. According to the Third Amended Complaint, he did not.

The Estate also points out that Richard listed "Sandra A. Lutz – spouse" as the primary beneficiary on his application for the Motorists policy. (*Id.* ¶ 125; *see also id.*, Ex. H, at 48, ECF No. 40-2.) This purportedly demonstrates Richard's intent that the designation "– spouse" control over Sandra's name and that he impliedly wanted Sandra to be paid only if she was his spouse. *See* (3rd Am. Compl., ¶¶ 125–131.) The plain language of the application (which is incorporated into the policy) does not support this view. The application instructs the applicant to "[g]ive full names and relationships" of beneficiaries. (*Id.*, Ex. H, at 48, ECF No. 40-2.) In light of that direction, the inclusion of "– spouse" after Sandra's name does not plausibly suggest

that Richard intended the primary beneficiary to read "Sandra A. Lutz, as long as she is my spouse." It simply shows that Sandra was Richard's wife when he applied for the policy.

### ii.

The second way a policyholder may change a beneficiary in lieu of complying with the policy's express terms is by entering into a separation agreement or settlement agreement with the beneficiary "by which the named beneficiary explicitly waives his or her interest in the insurance proceeds." *Dougherty,* 986 F. Supp. at 931. To be effective, such an agreement must include "express language . . . by which the beneficiary designation was revoked." *Id.*

The Estate claims that Sandra, in effect, waived her interest in the policy's proceeds when she signed the Settlement Agreement. She did not. The provision of the Settlement Agreement upon which the Estate relies states that "[t]he parties agree that each may maintain or dispose of any existing life insurance policies and may choose beneficiaries to any such policies as they see fit." (3rd Am. Compl., Ex. A., at 5, ECF No. 40-1.) No contract interpretation principles could convert this clause into an express waiver of Sandra's beneficiary status. The provision unambiguously allowed Richard and Sandra to retain control over their own life insurance policies and choose beneficiaries however they wished.

Even if this does not amount to an express waiver by Sandra, the Estate argues that the clause shows Richard's intent to remove Sandra as the primary beneficiary under his life insurance policy. The insufficiency of Richard's intent aside, the plain language of the document cannot support that interpretation. In fact, it is contradicted by the specificity of the provisions governing retirement benefits and bank accounts. With respect to retirement benefits, the parties agreed that each "shall relinquish" any marital rights in the other's accounts. (2d Am. Compl. Ex. A, at 4, ¶17, ECF No. 40-1.) Similarly, the Settlement Agreement clearly provides that

"[e]ach party shall retain control of the [bank accounts titled in his or her own name] and the proceeds of the account(s) currently under his or her control without interference from the other party." (*Id.* at 4, ¶19.)  There is no such express language in the clause discussing life insurance policies.

The Estate notes that the life insurance clause of the Settlement Agreement "addresses Richard's ability to change the beneficiary of [his] insurance policies." (3rd Am. Compl. ¶ 115.) That much is clear.  It is also clear from the facts alleged, however, that despite the five-month pendency of Richard and Sandra's divorce, Richard did not change the primary beneficiary of the Motorists policy, nor did he take any positive, unequivocal act toward such a change. Whether Richard would have removed Sandra as the policy's primary beneficiary will never be known.  The Court cannot, however, posthumously accomplish for the Estate what Richard himself chose not to do in the months and years preceding his untimely passing.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

Case 2:16-cv-01461-GJP   Document 50   Filed 10/06/16   Page 11 of 11