**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ESTATE OF RICHARD G. LUTZ, JR., Deceased and SHEREE NORDALL, <br><br> *Plaintiffs,* <br><br> v. <br><br> SANDRA LUTZ, et al. <br><br> *Defendants.* | CIVIL ACTION <br> NO. 16-01461 |

**PAPPERT, J.**                                                                     **February 23, 2017**

<u>MEMORANDUM</u>

The Estate of Richard Lutz and Sheree Nordall sued Sandra Lutz and the Standard

Insurance Company, among others, to recover life-insurance benefits Sandra received as the sole

beneficiary of her late ex-husband Richard's ERISA-governed life insurance policy.[1]  Before the

Court is Standard's Motion for Summary Judgment.  (ECF No. 53.)  For the reasons that follow,

the Court grants the motion.

**I.**

Richard and Sandra Lutz were married on May 18, 1985.  (Pl.'s Stmt. of Facts ("Pl.'s

Stmt."), ¶ 32, ECF No. 54.)  The marriage eventually deteriorated and in March 2012 Richard

hired an attorney to file a divorce complaint against Sandra in the Berks County Court of

Common Pleas.  (*Id.* ¶ 39.)  The couple entered into a Marriage Settlement Agreement ("the

Agreement") on August 28, 2012 to divide their marital assets.  (*Id.* ¶ 41.)  The Agreement

provides that "[t]he parties agree that each may maintain or dispose of any existing life insurance

---

[1]      Ms. Nordall is Mr. Lutz's sister and the executrix of his Estate.  She sues on behalf of the Estate as well as individually.  (Am. Compl., ECF No. 40, at 1.)

policies and may choose beneficiaries to any such policies as they see fit."  (Admin. R., at 00005, ECF No. 53-1.)  A divorce decree was entered in the Common Pleas Court on September 6, 2012.  (Pl.'s Stmt. ¶ 41.)  Richard died on September 26, 2012.  (*Id.* ¶ 46.)

At the time of his death, Richard had a life insurance policy governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  (*Id.* ¶ 35.)  The ERISA Plan was an employee welfare benefits plan sponsored by Cargill Inc., the parent company of Richard's employer, the Wilbur Chocolate Company.  (Def.'s Stmt. of Undisputed Facts ("Def.'s Stmt."), ¶¶ 1, ECF No. 53.)  The benefits under the Plan were funded by a group life insurance policy issued by Standard to Cargill.  (*Id.* ¶¶ 2–4.)  The Plan provides that benefits "will be paid to the Beneficiary you name" and according to established Plan procedures.  (*Id.* ¶ 13; Admin. R., at 00225–26, ECF No. 53-3.)  Sandra Lutz was the sole beneficiary listed on Richard's policy; Richard never removed her or added any other beneficiaries.  *See* (*id.* ¶¶ 10–11; Admin. R., at 000072.)

The Plan procedures require a claimant seeking benefits to submit a "proof of loss" form—written proof that a loss for which the policy provides benefits—to Standard within ninety days of the date of the loss.  (Admin. R., at 000222.)  The procedures also provide for administrative review of any denial of a claim for benefits.  (*Id.* at 000224.)  On October 5, 2012 Standard received a "proof of loss" by way of a "Proof of Death Claim Form" stating that Richard died on September 26, 2012.  (*Id.* at 000071.)  Standard corresponded with Sandra about her "claim for Life Insurance benefits" by October 8, 2012.  *See* (*id.* at 000070).  Standard requested Richard's certified death certificate from Sandra, which her attorney provided on

January 16, 2013.[2]  (*Id.* at 000053.)  On February 19, 2013, Standard issued to Sandra the $44,819.55 death benefit under Richard's policy.  (Def.'s Stmt. ¶ 17.)

That payment is at the heart of the Plaintiffs' claim against Standard.  Ms. Nordall called Standard on December 20, 2013 claiming that she believed Sandra was not the proper beneficiary of Richard's policy.  (Admin. R., at 000005.)  On November 18, 2014 Standard received a letter from the Estate's attorney also stating that Sandra should not have received the benefits under Richard's policy.  (Def.'s Stmt., ¶¶ 19; Admin. R., at 000021.)  The letter noted that Richard and Sandra were divorced at the time of his death, (Def.'s Stmt., ¶ 20; Admin. R., at 000021), though Standard already had notice of that fact, (Admin. R., at 000058.)  Because the ninety-day window to submit a claim had closed, and because Standard already paid the policy benefits to Sandra, the Plaintiffs neither submitted a claim for benefits nor requested an administrative review of Standard's decision to pay the benefits to Sandra.  *See* (Def.'s Stmt. ¶ 21; Pl.'s Stmt. of Facts, ¶ 21–22.)

The Estate and Nordall sued Standard and others in the Lancaster County Court of Common Pleas on March 7, 2016.[3]  (ECF No. 1-1.)  The defendants removed the case to this Court on March 30, 2016, (ECF No. 1).  Standard filed its motion for summary judgment on December 29, 2016, (ECF No. 52), the Plaintiffs responded on January 19, 2017, (ECF No. 54),

---

[2]      The Plaintiffs contend that Sandra did not file a claim until January 16, 2013—outside the ninety-day window required by the Plan.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. (Pl's Resp."), ¶ 69, ECF No. 54.)  That is a misreading of the Administrative Record.  The parties agree that Standard received proof of loss on October 5, 2012.  *See* (Def.'s Stmt. ¶ 15; Pl.'s Resp. ¶ 67.)  The Plaintiffs read the January 16, 2013 letter from Sandra's attorney, Loren Schrum, as a belated initiation of Sandra's claim.  (Pl.'s Resp. ¶ 69.)  The letter was not the beginning of correspondence between Standard and Sandra, however; it simply noted that Schrum was Sandra's attorney and included the certified copy of Richard's death certificate Standard had previously requested from Sandra.  (Admin. R., at 000059.)  The letter further requested that a check be sent directly to Sandra at her home address.  (*Id.* at 000053.)

[3]      The Plaintiffs also sued Sandra Lutz, Motorists Life Insurance Co., Vanguard Group, Inc. and Cargill Inc. They voluntarily dismissed Vanguard Group, Inc. and Cargill Inc. on May 19, 2016.  (ECF No. 28.)  The Court granted Motorists's motion to dismiss on October 6, 2016.  (ECF No. 50.)  The Plaintiffs requested an entry of default against Sandra Lutz on October 12, 2016, (ECF No. 52), and a default was entered the same day.

and Standard filed its reply on January 26, 2017, (ECF No. 55).  The Court held oral argument

on the motion on February 13, 2017, (ECF No. 57), and has thoroughly reviewed the

administrative record.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A dispute is genuine if the

evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  Summary judgment is granted where

there is insufficient record evidence for a reasonable factfinder to find for the plaintiff.  *Id.* at

252.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Id.*

In a case concerning an ERISA plan administrator's benefits determination, the Court's

review must be based on the administrative record.  *See Howley v. Melon Fin. Corp.*, 625 F.3d

788, 793 (3d Cir. 2010) (holding that courts must decide ERISA summary judgment motion

based on "the materials that were before the administrator when it made the challenged

decision").  Though it was not the case here, to the extent that a claim for breach of a fiduciary

duty necessarily implicates evidence extrinsic to the administrative record, the Court may

consider relevant admissible evidence outside the administrative record.  *Creelman v. Carpenters*

*Pension & Annuity Fund of Phila. & Vicinity*, 945 F. Supp. 2d 592, 594 (E.D. Pa. 2013).

Courts review a denial of benefits in ERISA cases "under a *de novo* standard unless the

benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility

for benefits or to construe the terms of the plan," in which case courts review a denial of benefits for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Doroshow v. Hartford Life and Acc. Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009). The administrator here had discretionary authority to determine eligibility for benefits. *See* (Admin. R., at 000224). This abuse of discretion standard in the ERISA context is "essentially identical" to an arbitrary and capricious standard. *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3d Cir. 2011). Thus, a court may overturn a plan administrator's denial of benefits only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law. *Doroshow*, 574 F.3d at 234. A decision is supported by substantial evidence if "there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000).

## III.

ERISA's civil enforcement provisions are found at 29 U.S.C. § 1132(a). Two subsections of § 1132(a) are relevant here: First, § 1132(a)(1)(B) permits a participant or beneficiary to bring a civil suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B). Second, § 1132(a)(2) permits civil suits "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate *relief under* [*§ 1109*]." *Id.* § 1132(a)(2) (emphasis added).

Section 1109 establishes a fiduciary's personal liability:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary,

and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

29 U.S.C. § 1109(a).

Section 1104 of ERISA establishes a "prudent man" standard of care for fiduciaries:

(1) . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> . . .
>> (B) With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>> . . .
>> (D) in accordance with the documents and instruments governing the plan . . . .

*Id.* §§ 1104(a)(1)(B), (D).

## A.

### i.

Plaintiffs' amended complaint contains only one count against Standard. In Count IV, the Plaintiffs assert that Standard breached a fiduciary duty under § 1109(a), *see* (Amend. Compl., ¶¶ 80, 91–93), yet the Plaintiffs seek to recover Richard's life insurance benefits under § 1132(a)(1)(B), *see* (Pl.'s Resp. ¶ 100).[4] As a matter of law, this cannot be done. Section 1132(a)(2) provides the only means of suing for breaches of fiduciary duty arising under § 1109.

---

[4]    Specifically, the Plaintiffs contend that the standard of care articulated in § 1104(a)(1)(B) imposes a duty on the plan to "investigat[e] any judicial order or event that may affect a beneficiary's status," which Standard did not do, allegedly subjecting it to liability under § 1109.

The Plaintiffs also assert that Sandra waived her right to make a claim against Richard's Estate in paragraph 22 of the Marriage Settlement Agreement. (Am. Compl. ¶ 85.) This case does not involve Sandra making a claim against the Estate, however, and in any event, the preceding paragraph of the Marriage Settlement Agreement makes clear that "[t]he parties agree that each may maintain or dispose of any existing life insurance policies and may choose beneficiaries to any such policies as they see fit." (*Id.*)

The Plaintiffs also asserted in a letter to Standard that 23 Pa. C.S.A. § 6111.2 requires that Sandra be treated as though she predeceased Richard due to the couple's divorce. (Admin. R. at 000021.) That statute instructs that any designation of a spouse as a beneficiary on a life insurance policy is void if, at the time of the policyholder's death the couple are divorced, or if the policyholder dies during divorce proceedings. The statute is preempted by ERISA, however, and therefore does not apply to the Plaintiffs' claim against Standard. *See In re Estate of Sauers*, 32 A.3d 1241 (Pa. 2011).

Because the Plaintiffs' seek to recover the benefits of Richard's policy, however, they cannot proceed under § 1132(a)(2).

Plaintiffs suing under § 1132(a)(2) may not recover the benefits of an individual's policy. *Haberern v. Kaupp Vascular Surgeons LTD Defined Benefit Pension Plan*, 24 F.3d 1491, 1500–01 (3d Cir. 1994) ("[Plaintiffs] may not recover damages for a breach of fiduciary duty under section 502(a)(1)(B)."). Rather, claims for breach of fiduciary duty under § 1132(a)(2), which seek relief under § 1109, "are derivative in nature—that is, while various parties are entitled to bring suit . . . they do so on behalf of the plan itself." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)); *see also Russell*, 473 U.S. at 140 ("[R]ecovery for a violation of § 1109 inures to the benefit of the plan as a whole."). The plan itself—not the plaintiffs—takes legal title to any recovery from a claim arising pursued under § 1132(a)(2), because § 1109 "does not authorize a private right of action for compensatory relief." *See id.*; *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986).

The Supreme Court examined this very issue in *Russell*:

> [W]hen the entire[ty of § 1109] is examined, the emphasis on the relationship between the fiduciary and the plan as an entity becomes apparent. Thus, not only is the relevant fiduciary relationship characterized at the outset as one 'with respect to a plan,' but the potential personal liability of the fiduciary is 'to make good *to such plan* any losses *to the plan* . . . and to restore *to such plan* any profits of such fiduciary which have been made through use of the assets *of the plan* . . . .'

*Russell*, 473 U.S. at 140 (quoting 29 U.S.C. § 1109)). "Consequently, Plaintiff[s] . . . can only bring a claim pursuant to §§ 1132(a)(2) and 1109 *on behalf of the* Plan, not *against* the Plan." *Gidley v. Reinhard Foodservice, L.L.C.*, No. 14-0800, 2015 WL 1136447, at *5 (M.D. Pa. Mar. 12, 2015) (quotations and citations omitted); *see also Hozier v. Midwest Fasteners, Inc.*, 908

F.2d 1155, 1162 n.7 (3d Cir. 1990) ("Because plaintiffs here seek to recover benefits allegedly owed to them in their individual capacities, their action is plainly not authorized by either [§§ 1109 or 1132(a)(2)]).

Here, the Plaintiffs ask the Court to order Standard to "*pay to the Estate* of Richard G. Lutz, Jr. an amount equal to any loss *incurred by the Estate* . . . due to non-receipt of the Standard group life insurance death benefit." (Am. Compl., at 19 (emphasis added).) When asked at oral argument how paying the benefits of Richard's life insurance policy to the Estate would inure to the benefit of the Plan as a whole, counsel asserted that "[t]he plan as a whole would benefit from the absence of a breach of fiduciary duty. The plan as a whole would benefit from its own standards being followed during that . . . time for an investigation, that money would have been set aside." (Hr'g Tr., at 35:19–23.) That is plainly insufficient.

In *Harrow*, the Third Circuit Court of Appeals addressed a claim in which the executrix of a former employee's estate alleged that a putative class of plaintiffs were wrongfully denied insurance coverage for Viagra in violation of ERISA. Although the plaintiff couched her claim in fiduciary duty terms, *see id.* at 245, 253–54, the court concluded the claim was in fact one for benefits, *id.* at 254. In doing so, the Court explained that "[a] claim for breach of fiduciary duty is 'actually a claim for benefits [if] the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA.'" *Id.* at 254 (citing *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)).

Plaintiffs' amended complaint asserts that "Standard breached its fiduciary duty to Richard . . . by its failure to recognize the terms of the Marital Settlement Agreement entered by Richard . . . and Sandra Lutz." (Am. Compl., at 18.) It further contends that Standard breached its fiduciary duty by "its failure to recognize the divorce of Richard . . . and Sandra Lutz." (*Id.* at

19.)  While the amended complaint thus casts the claim in terms of the legal duties imposed by ERISA, it is nothing more than a grievance over Standard's decision to pay the policy's benefits to Sandra as opposed to the Estate.  *See Harrow*, 279 F.3d at 254; (Am. Compl., at 18–19).  The breach of fiduciary duty alleged by the Estate and Nordall "is merely a claim for benefits because the alleged breach . . . is clearly not independent of the denial of benefits."  *See Menendez v. United Food & Comm. Workers Local 450T, AFL-CIO*, No. 05-1165, 2005 WL 1925787, at *3 (D.N.J. Aug. 11, 2005) (citing *Harrow*, 279 F.3d at 254).

### ii.

Standard would be entitled to summary judgment even if the plaintiffs asserted a proper claim for breach of fiduciary duty under § 1132(a)(2).  The Plaintiffs contend that Standard had a duty under federal common law applying ERISA to "investigate the marital history of a participant and determine whether any domestic relations orders exist that could affect the distribution of benefits."[5]  (Am. Compl. ¶ 86.)  Standard, meanwhile argues that its duty was to follow Richard's "plan documents," such as his beneficiary designation, regardless of the terms of Richard and Sandra's Marriage Settlement Agreement.

Standard is correct.  *See Kennedy v. Plan Adm'r for DuPont Savs. & Inv. Plan*, 555 U.S. 285 (2009).  While *Kennedy* articulated this "plan documents rule" with respect to ERISA pension plans, the rule applies in the context of ERISA employee welfare benefits plans as well. *See Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 134 (3d Cir. 2012) (finding the "plan at issue in this dispute is an 'employee welfare benefits plan' within the meaning of ERISA" and that the district court properly relied on *Kennedy* to conclude that ERISA required

---

[5]      In their response to Standard's motion, the Plaintiffs contend that Standard had a duty to determine whether the divorce decree was a Qualified Domestic Relations Order within the meaning of ERISA.  (Pl.'s Mem., at 26–27.) The parties agreed at oral argument, however, that because this case does not involve a pension plan, Standard's procedures did not require it to evaluate whether Richard and Sandra's divorce decree was a Qualified Domestic Relations Order.  (Hr'g Tr., at 13:1–7, 25:23–26:4.)

the benefits of the plan to be distributed to "the named beneficiary in accordance with the plan documents."); *see also Boyd v. Metro. Life Ins. Co.*, 636 F.3d 138, 142 (4th Cir. 2011) ("Neither *Kennedy* nor 29 U.S.C. § 1104(a)(1)(D) provides any basis for concluding that the plan documents rule only applies to employee pension benefit plans.  Indeed, in deciding to broadly endorse the plan documents rule, *Kennedy* drew upon case law involving employee welfare benefit plans—an odd decision if employee welfare benefit plans and employee pension benefit plans were somehow different.").

Because the Plaintiffs' claim is one for Richard's benefits, and because Standard did not have a fiduciary duty under federal common law to examine extrinsic materials, the claim cannot proceed under § 1132(a)(2).  No reasonable juror could conclude that Standard's decision to pay Sandra was without reason or unsupported by substantial evidence; that decision was also not erroneous as a matter of law.  *See Doroshow*, 574 F.3d at 234.

**B.**

**i.**

To the extent that Plaintiffs seek to recover Richard's benefits under § 1132(a)(1)(B), they must first exhaust their administrative remedies.  *See Zipf v. Am. Tel. & Tel. Co.*, 799.  As the administrative record makes clear, however, they did not do so.  The exhaustion requirement is a judicially created hurdle: Because ERISA plans must offer beneficiaries an administrative appeals process if their claims are denied, *see* 29 U.S.C. § 1133, courts in this circuit require claimants "to exhaust this congressionally mandated system before resorting to the courts." *Stanford v. Foamex L.P.*, No. 07-4225, 2008 WL 3874823, at *5 (E.D. Pa. Aug. 20, 2008).  This exhaustion requirement:

> [E]nsures that the appeals procedures mandated by Congress will be employed, permits officials of benefit plans to meet the responsibilities properly entrusted to

10

> them, encourages the consistent treatment of claims for benefits, minimizes the costs and delays of claim settlement in a nonadversarial setting, and creates a record of the plan's rationales for denial of the claim.

*Zipf*, 799 F.2d at 892; *see also Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244 (2002) ("Courts require exhaustion of administrative remedies 'to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." (citing *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)).

The Plan establishes an administrative process for filing claims. A claimant must provide proof of loss within ninety days of the loss or as soon as reasonably possible. (Admin. R., at 000222–23.) If a claimant fails to provide proof of loss within that timeframe, the claim will be denied. (*Id.* at 000222.) Within ninety days of receiving a proof of loss, Standard, as the claim administrator for the Plan, must send the claimant either a written decision on the claim or a notice that the review period is extended for an additional ninety days. (*Id.* at 000224.) In the event Standard denies a claim, it must send the claimant: a written notice of denial containing the reason for the denial; reference to the specific policy; reference to any internal rule or policy relied upon in denying the claim; a description of any information needed to support the claim; information regarding the claimant's right to review Standard's decision; and information regarding the right to bring a civil suit for benefits under 29 U.S.C. § 1132(a). (*Id.* at 000223–24.)

As ERISA requires, the Plan also establishes a process for the administrative review of denied claims. *See* 29 U.S.C. § 1133. Claimants must request, in writing, a review within sixty days of receiving notice of a denied claim. (*Id.* at 000224.) During the review process, a claimant may support a claim with "written comments or other items." (*Id.*) Standard must

review any written materials submitted in support of the claim and, within sixty days, return either a written decision or notice that the review period is extended for another sixty days.  (*Id.*)

The appeal process is not an empty requirement; it generates valuable material for review.  If Standard denies any part of a claim following a review, it must provide the claimant with the reasons for its decision, specific references to the parts of the policy on which that decision was based, references to any internal rules or guidelines the Plan relied upon in making its decision, information concerning the claimant's rights to receive free copies of documents and records relevant to the claim and information regarding the claimant's rights to bring a civil suit under § 1132(a).  (*Id.*)

### ii.

The Estate and Nordall do not even contend that they exhausted their administrative remedies.  They argue instead that they are excused from the exhaustion requirement under the contract-law doctrine of impossibility.  (Pl.'s Mem., at 31.)  Impossibility, however, is a defense to breach of contract and does not apply to this case.  *See* WILLISTON ON CONTRACTS § 77:6 (4th ed. 2015).

Although the Plaintiffs incorrectly rely on impossibility, courts can waive the administrative exhaustion requirement of § 1132(a)(1)(B) when a plaintiff demonstrates a clear and positive showing of futility.  *D'Amico v. CBS Corp.*, 297 F.3d 287 (3d Cir. 2002).  Whether requiring exhaustion of administrative remedies is futile depends on five factors: (1) whether the plaintiff diligently pursued administrative relief; (2) whether the plaintiff acted reasonably in seeking immediate judicial review; (3) whether the employer has a fixed policy denying benefits; (4) the failure of the insurance company to comply with its own internal administrative

procedures; and (5) testimony of plan administrators that any administrative appeal would be futile. *Harrow*, 279 F.3d at 250.

The Plaintiffs did not pursue administrative relief at all, much less diligently. By the time the Plaintiffs first contacted Standard the ninety-day period to make a claim had lapsed and Standard had already paid Richard Lutz's policy benefits to Sandra. (Pl.'s Mem., at 32–33.) While Plaintiffs' counsel stated at oral argument that the Estate could not make a claim until Nordall was appointed executrix, (Hr'g Tr., at 36:25–37:3), Nordall did not petition for appointment as executrix until September 5, 2013 and for a grant of letters to open the Estate until September 19, 2013—nearly a year after Richard's death, *see* (Pl.'s Stmt. ¶ 72). Nothing in the administrative record suggests that Standard had a "fixed policy" of denying benefits in this case; Standard simply paid the benefits to Richard Lutz's designated, sole beneficiary. Nor is there evidence that Standard failed to follow its own internal procedures. Rather, the Plaintiffs contend primarily that Standard failed to meet its duty imposed by federal common law to evaluate whether the divorce decree and the Marriage Settlement Agreement waived Sandra's rights as a beneficiary under Richard's policy. *See* (*id.* at 33:16–23); *see also* 29 U.S.C. § 1104(a)(1)(B). Neither Standard's internal procedures nor the federal common law required such an inquiry. *See supra* subsection III.A.ii. Finally, there is no "testimony of plan administrators that any administrative appeal would be futile" in the record. *See Harrow*, 279 F.3d at 250.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

13