IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF RICHARD G. LUTZ, JR., Deceased and SHEREE NORDALL, *Plaintiffs*, v. SANDRA LUTZ, *et al.*, *Defendants*. | CIVIL ACTION NO. 16-1461 |

**PAPPERT, J.**                                                                                                      **August 4, 2017**

## MEMORANDUM

Richard Lutz died on September 26, 2012. His death spawned this litigation by his Estate against several defendants to recover retirement and life insurance proceeds paid to his ex-wife, Sandra Lutz. The Estate has filed a motion for default judgment against Sandra which the Court, for the reasons that follow, grants in part and denies in part.

### I.

The Estate of Richard Lutz, by its Executrix Sheree Nordall,[1] sued Richard's ex-wife Sandra Lutz, Motorists Life Insurance Company, Standard Insurance Company, Vanguard Group, Inc. and Cargill Inc. to recover the proceeds of Richard's 401(k) account and the death benefits of his two life insurance policies after all were paid to Sandra. The Estate now moves for default judgment on three counts against Sandra, who has not appeared or otherwise defended herself. It contends that Sandra's decision to seek the proceeds of Richard's 401(k) constituted a breach of the terms of the

---

[1]     Ms. Nordall is Richard Lutz's sister.

1

Marriage Settlement Agreement (the "Settlement Agreement") she and Richard entered as part of their divorce. It also contends that Sandra violated 18 U.S.C. § 1027[2] for claiming the death benefit in Richard's Standard life insurance policy. Finally, it sues Sandra for breach of contract for seeking the death benefit of Richard's life insurance policy with Motorists.

The Complaint was originally filed in the Lancaster County Court of Common Pleas. (Notice of Removal, at 1, ECF No. 1.) After the case was removed to federal court, Sandra informed the Estate that she did not intend to defend this action. *See* (ECF No. 61-2, at 4).[3] On October 12, 2016 the Estate requested the entry of default against Sandra. (ECF No. 52.) The Clerk of Court entered default the same day. After all other Defendants in this case were terminated, the Estate filed a motion for default judgment on April 27, 2017. (ECF No. 61.) The Court held a hearing on the motion on August 2, 2017. (ECF No. 66.)

## II.

Federal Rule of Civil Procedure 55 governs the entry of default judgment. The Court may enter default judgment where three factors are met: (1) whether the plaintiff will be prejudiced if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). Before a court can enter a default judgment, a plaintiff must also present evidence of:

---

[2]     Section 1027 establishes criminal penalties for making knowingly false statements with regard to published documents in ERISA-governed plans.

[3]     Ms. Lutz also sent a letter informing the Court that she would not be attending the default judgment hearing in this case. *See* (ECF No. 64.) The Court then rescheduled the hearing, (ECF No. 62), and subsequently received another letter from Ms. Lutz to the same effect. *See* (ECF No. 65).

(1) the court's basis of personal jurisdiction over the defaulting defendant; (2) proper service of process upon the defaulting defendant; (3) facts necessary to state a cause of action; and (4) the amount claimed in damages. *D'Onofrio v. II Mattino*, 430 F. Supp. 2d 431, 436 (E.D. Pa. 2006).

### III.

### A.

When a court considers personal jurisdiction in the posture of a default judgment, "although the plaintiffs retain the burden of proving personal jurisdiction, they can satisfy that burden with a *prima facie* showing," and "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *D'Onofrio*, 430 F. Supp. 2d at 437 (quoting *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)). A plaintiff presents a *prima facie* case by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citing *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)).

The Court has personal jurisdiction over Sandra Lutz. Under Federal Rule of Civil Procedure 4(k), a district court typically exercises personal jurisdiction according to the law of the state in which it sits. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States and . . . based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 PA. CONS. STAT. ANN. § 5322(b). The Estate has proved that Sandra was personally served in

Pennsylvania. *See* (ECF No. 48). That establishes personal jurisdiction consistent with traditional notions of fair play and substantial justice as required by the Due Process Clause. *Burnham v. Superior Court of Cal., Cty. of Marin*, 495 U.S. 604, 610–11 (1990); *cf. also* FED. R. CIV. P. 4(e)(2)(A).

**B.**

The estate alleges three causes of action against Sandra in the Second Amended Complaint. In Count I, it contends that Sandra is liable for breaching the terms of the Settlement Agreement between her and Richard by seeking the proceeds of his 401(k). (2d Am. Compl., ¶¶ 40–54, ECF No. 40.) In Count III, the Estate seeks to sue Sandra under 18 U.S.C. § 1027 for applying for—and receiving—the death benefit of Richard's life insurance policy with Standard. (*Id.* ¶¶ 67–78.) In Count VII, the Estate alleges that Sandra breached the terms of the Settlement Agreement by seeking the death benefit of Richard's life insurance policy with Motorists. (*Id.* ¶¶ 134–45.)

**i.**

To state a claim for breach of contract, a plaintiff must allege facts to show that: (1) there was a contract to which the plaintiff and defendant were parties; (2) the defendant breached a duty imposed by the contract; and (3) the plaintiff suffered damages as a result. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). The Estate has alleged the existence of a contract—the Settlement Agreement. *Cf. Lyons v. Lyons*, 585 A.2d 42, 45 (Pa. Super. Ct. 1991). In the Settlement Agreement, Richard and Sandra agreed to "relinquish any marital rights to the other party's [401(k)] account which he or she may have." (Settlement Agreement, ¶ 17.) The Estate also alleges that Sandra breached

this term of the Settlement Agreement. It contends that despite relinquishing any right to Richard's 401(k), Sandra "claimed and received the spousal share of Richard's 401(k)." (2d Am. Compl. ¶ 50.) Finally, the Estate alleges that as a direct result of Sandra's claim against Richard's account, it suffered damages in the amount of $44,052.54.[4] The Estate has therefore sufficiently alleged facts necessary to state a claim for breach of contract in Count I of the complaint.

### ii.

The Estate next points to Count III of the Second Amended Complaint, where it contends that Sandra committed fraud by claiming the death benefit of Richard's life insurance policy with Standard—an ERISA-governed plan. The Estate contends that in claiming the death benefit, Sandra knowingly concealed a fact—that she and Richard were divorced—that she was required to disclose under ERISA. The Estate concludes that it is entitled to damages under 18 U.S.C. § 1027.

The Estate cannot state a valid cause of action in Count III. Section 1027 states:

> Whoever, in any document required by title I of the Employee Retirement Income Security Act of 1974 (as amended from time to time) to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan, makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such title or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such title to be published or any information required by such title to be certified, shall be fined under this title, or imprisoned not more than five years, or both.

---

[4] As a result of the entry of the default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inv. V. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). The Court considers the validity of the damages claimed by the state *infra*, Section III.D.

5

18 U.S.C. § 1027. This criminal statute does not create a private cause of action. The Estate notes that the Supreme Court has held that the mere "provision of a criminal penalty does not necessarily preclude implication of a private cause of action for damages." (Pl.'s Mem., at 7–8 (citing *Cort v. Ash*, 422 U.S. 66, 79 (1975))). But the Supreme Court also cautions against creating private causes of action from "bare criminal statute[s], with absolutely no indication that civil enforcement of any kind was available to anyone." *See Cort*, 422 U.S. at 80. Not only is there no indication that § 1027 creates a civil right of enforcement, ERISA contains its own exclusive civil enforcement provision. *See* 29 U.S.C. § 1132(a); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990) (noting that § 1132(a) was modeled on "the exclusive remedy provided by § 301 of the Labor Management Relations Act"); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 (3d Cir. 2014) (pointing to "ERISA's exclusive civil remedy scheme in § [1132(a)]"). Because ERISA contains an exclusive civil remedy, the Court will not read § 1027 as creating another, alternative civil remedy in ERISA cases.

### iii.

Finally, the Estate seeks a default judgment with regard to Count VII, which alleges breach of contract against Sandra for claiming the benefits of Richard's life insurance policy with Motorists.[5]

Once again, a plaintiff in a breach of contract case must allege that: (1) there was a contract to which the plaintiff and defendant were parties; (2) the defendant breached a duty imposed by the contract; and (3) the plaintiff suffered damages as a

---

[5] In its initial motion for default judgment, the Estate sought default based on Count V of the Second Amended Complaint. *See* (Pl.'s Mot., at 2, ECF No. 61 (citing Paragraph 120 of the Second Amended Complaint)). At the default judgment hearing, however, counsel for the Estate clarified that it was seeking a default judgment with regard to Count VII.

6

result. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). As noted, the first element is met here. *See supra* subsection III.C.i.

The Estate contends that in Paragraph forty-two of the Settlement Agreement, Sandra waived her right to claim Richard's life insurance policy with Motorists. Paragraph forty two states, in relevant part:

> *Except as otherwise provided herein*, each party releases and discharges completely and forever the other from any and all right, title, interest or claim of past, present or future support, division of property including income or gain from property hereafter accruing . . . .

(Settlement Agmt., ¶ 42, ECF No. 40-1 (emphasis added).)

The Estate contends that this represents an express agreement by Sandra to waive any right to the benefit of Richard's life insurance policies. That argument overlooks the first five words of the clause: "Except as otherwise provided herein." In Paragraph twenty-two of the Settlement Agreement, Richard and Sandra agreed that "each may maintain or dispose of any existing life insurance policies and may choose beneficiaries to any such policies as they see fit." (*Id.* ¶ 22.) And yet Richard maintained Sandra as the primary beneficiary of his life insurance policy with Motorists. *See Estate of Lutz v. Lutz*, No 14-1461, 2016 WL 5848856, at *3 (E.D. Pa. Oct. 6, 2016). Sandra did not expressly waive her right to claim the death benefit of Richard's Motorists policy and therefore did not breach a duty imposed by the Settlement Agreement.

The Court must nevertheless consider whether Sandra lost her right to claim the benefit of Richard's Motorists policy by operation of law. The Estate maintains that 20

PA. CONS. STAT. ANN. § 6111.2 operates to invalidate Richard's designation of Sandra as the beneficiary to Motorists policy. (2d Am. Compl. ¶¶ 139–45.) That is incorrect.

Section 6111.2 instructs that any designation of a spouse as a beneficiary on a life insurance policy is void if, at the time of the policyholder's death, the couple are divorced or the policyholder dies during divorce proceedings. 20 PA. CONS. STAT. ANN. § 6111.2. Richard named Sandra as the primary beneficiary of his Motorists policy on August 31, 1992, giving Sandra a substantive "contract expectancy which would result in vested rights" against Motorists when Richard died. *See* (2d Am. Compl., Ex. H, at 48–49, ECF No. 40-2); *see also Parsonese v. Midland Nat'l Ins. Co.* 706 A.2d 814, 816. Section 6111.2 did not take effect until December 16, 1992. *See Parsonese*, 706 A.2d at 814. The Pennsylvania Supreme Court has held that applying § 6111.2 retroactively to strip a spouse in Sandra's position of her expectancy would violate of the Contracts Clause of the Pennsylvania and United States Constitutions. *Id.* at 818–19; *see also* U.S. CONST. art. I, § 10. *Accord, McMahon v. McMahon*, 612 A.2d 1360, 1364–65 (Pa. Super. Ct. 1992) (holding that retroactive application is constitutional only where it "would not alter the obligations of the parties").[6] Because the Settlement Agreement does not waive Sandra's right to the benefit of Richard's Motorists policy, and because § 6111.2 does not operate to bar Sandra from receiving the benefit of that policy, the Estate has not stated a cause of action for breach of contract against Sandra in Count VII. The Estate can only obtain a default judgment against Sandra on Count I of the Second Amended Complaint.

---

[6] The Estate also contends that "the Motorists policy specifically refers to Sandra Lutz as the spouse of Richard," thus limiting her rights as a beneficiary to the duration of her marriage to Richard. (Pl.'s Mem., at 11–12.) The Court has already rejected such an expansive reading of the "– spouse" designation on Richard's Motorists policy application. *See Estate of Lutz v. Lutz*, No. 16-1461, 2016 WL 5848856, at *5 (E.D. Pa. Oct. 6, 2016).

## C.

The Estate has presented evidence of its damages for Count I. It attached a copy of the 401(k) distribution check Sandra received from Vanguard Fiduciary Trust Company, which showed Sandra received $44,052.44 despite waiving her right to receive that money. *See* (Pl.'s Mem, at 33, ECF No. 67.)

The Estate also seeks attorneys' fees from Sandra and points to Paragraph thirty-five of the Settlement Agreement, which states:

> In the event that either party must bring an action based upon to [sic] breach of the other for any of the terms and conditions of this Agreement, the party having so breached the Agreement, "the responsibility of breaching the Agreement to be determined by a Court of competition jurisdiction," agrees to be responsible not only for the damages sustained by the non-breaching party, but also agrees to reimburse the non-breaching party for any and all reasonable attorney's fees and Court costs incurred because of the breach of the within Agreement.

(Settlement Agreement, ¶ 35.) The attorney for the Estate attached to the motion for default judgment a billing statements for the work performed on this case. *See* (Pl.'s Mem., at 35–38, ECF No. 67). As the Court explained at the default judgment hearing, it cannot award attorneys' fees on that information alone.

The Third Circuit Court of Appeals requires district courts to clearly set forth their reasoning for fee awards so that any award can be reviewed for abuse of discretion. *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005). This typically requires the Court to "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005) (citing

*Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)). "The party seeking fees bears the burden of establishing by way of satisfactory evidence"—that is by affidavit—"that the requested hourly rates meet this standard." *Id.* (internal quotations and citations omitted).

Counsel initially sought fees for their work in the entire case, which the Court noted was inappropriate as several counts in the Second Amended Complaint are directed to defendants other than Sandra Lutz. While counsel subsequently provided billing statements for their work on those counts against Sandra Lutz, they did not provide the Court with adequate evidence to determine reasonable attorneys' fees. The Court will consider awarding attorneys' fees upon receiving an affidavit with information sufficient to determine the reasonableness of the fee requested.

## IV.

The Estate has presented sufficient evidence of the Court's personal jurisdiction over Sandra, proper service of process upon Sandra, the facts necessary to state a cause of action, and the appropriate amount of damages with regard to Count I. *D'Onofrio*, 430 F. Supp. 2d at 436. The only remaining consideration is the three factors that control whether a default judgment should be granted: (1) prejudice to the Estate if default is denied, (2) whether Sandra appears to have a litigable defense, and (3) whether Sandra's delay is due to culpable conduct. *See $55,518.05 in U.S. Currency*, 728 F.2d at 195.

First, the Estate would be prejudiced if default judgment were denied. The Estate has presented sufficient evidence that Sandra's breach of the Settlement Agreement caused it monetary injury, and it has no other remedy against her given

10

that she has indicated no desire defend themselves in the matter. *See Summit Tr. Co. v. Paul Ellis Inv. Assoc.*, LLC, No. 2:12-6672, 2013 WL 3967602, at *4 (E.D. Pa. Aug. 2, 2013); *see also* (ECF No. 61-2, at 4). Second, there are no facts to suggest that Sandra has a litigable defense to Count I, and her failure to appear or otherwise respond to the Complaint further demonstrates a lack of a litigable defense. *See Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271–72 (E.D. Pa. 2014). Finally, Sandra's default is attributable to her culpable conduct: at an early stage in these proceedings, she informed the Estate through her counsel at the time that she did not intend to defend herself in this matter, *see* (ECF No. 61-2, at 4.).

Default judgment is therefore entered in favor of the Estate against Sandra Lutz on Count I of the Second Amended Complaint. Sandra is liable for a sum of $44,052.44.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.